UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| MONA LISA AT CELEBRATION, LLC, | ) | Case No. 6:09-bk-00458-KSJ |
| | ) | Chapter 11 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| LAURA BRUNO, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Adversary Proc. No. 6:09-ap-00049 |
| vs. | ) | |
| | ) | |
| MONA LISA AT CELEBRATION, LLC, | ) | |
| WESTCHESTER FIRE INSURANCE | ) | |
| COMPANY, SUNTRUST BANK, and | ) | |
| BANKFIRST, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| KAREN DODSWORTH, ET AL., | ) | |
| | ) | Adversary Proc. No. 6:09-ap-000769 |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| MONA LISA AT CELEBRATION, LLC, | ) | |
| WESTCHESTER FIRE INSURANCE | ) | |
| COMPANY, SUNTRUST BANK, and | ) | |
| BANKFIRST, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| MOIRE MCKIBBIN, ET AL., | ) | |
| | ) | Adversary Proc. No. 6:09-ap-000770 |
| Plaintiffs, | ) | |
| vs. | ) | |
| | ) | |
| MONA LISA AT CELEBRATION, LLC, | ) | |
| WESTCHESTER FIRE INSURANCE | ) | |
| COMPANY, SUNTRUST BANK, and | ) | |
| BANKFIRST, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION
## DENYING DEFENDANTS' MOTIONS TO DISMISS

The debtor, Mona Lisa at Celebration, LLC ("Mona Lisa"), owns and operates an upscale hotel which was built with the intention that investors would purchase individual suites as hotel condominiums. The 55 plaintiffs, each a dissatisfied purchaser of these condominium units, have filed these three separate adversary proceedings—the Bruno Adversary (6:09-ap-00049), the Dodsworth Adversary (6:09-ap-000769), and the McKibbin Adversary (6:09-ap-000770)—asserting the same ten counts against the same four defendants: Mona Lisa, the debtor; BankFirst, the mortgage lender enabling the debtor to purchase the property; SunTrust Bank, the escrow agent who held the plaintiffs' purchase deposits; and Westchester Fire Insurance Company, who issued a surety bond in connection with the debtor's use of the plaintiffs' purchase deposits.

The defendants have filed motions to dismiss the complaints (Doc. Nos. 11, 14, 17 and 39 in the Bruno Adversary; Doc. Nos. 15, 17 and 19 in the Dodsworth Adversary; and Doc. Nos. 6, 8 and 9 in the McKibbin Adversary) asserting the actions are improperly brought as adversary proceedings, certain claims fail to state a cause of action, and certain allegations are time barred by the applicable statutes of limitation. For the reasons explained below, the Court will deny the motions to dismiss and direct the parties to proceed with mediation and estimation of these complicated issues in an effort to minimize litigation costs and to increase recovery to all creditors in this case, including the plaintiffs in these adversary proceedings.

Courts reviewing motions to dismiss must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Financial Security Assur., Inc. v. Stephens, Inc., 450 F.3d 1257, 1262 (11th Cir. 2006) (citing Roberts v. Fla. Power & Light Co., 146 F.3d 1305, 1307 (11th Cir. 1998)). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Financial Security, 450 F.3d at 1262 (citing

Conley v. Gibson, 355 U.S. 41, 45-46, 78 (1957)). "The threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is, as we have stated previously, 'exceedingly low.'" Financial Security, 450 F.3d at 1262 (citing Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citing Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev., 711 F.2d 989, 995 (11th Cir. 1983))). "That said, 'while notice pleading may not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim, it is still necessary that a complaint 'contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.'" Financial Security, 450 F.3d at 1262 (citing Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001) (quoting In re Plywood Antitrust Litig., 655 F.2d 627, 641 (5th Cir. Unit A, 1981))).

Applying that standard, the Court assumes Mona Lisa is a limited liability company created to develop and sell one- and two-bedroom suites at the debtor's hotel. From June 2005, through September 2007, plaintiffs entered into agreements with the debtor to purchase specific units and paid deposits of 15 to 20 percent of the purchase price (the "Deposits") into an escrow account maintained by SunTrust, the escrow agent. In accordance with the purchase agreements, SunTrust immediately released approximately half of the Deposits to the debtor but initially retained the balance, the minimum amount that an escrow agent must keep to comply with Florida Statutes § 718.202.

Thereafter, in apparent reliance on Florida Statutes § 718.202, the debtor purchased from Westchester a $6.75 million surety bond (the "Surety Bond")[1] in an amount equal to the remaining Deposits held in escrow (approximately 10 percent of the purchase price.). The obliges of the Surety Bond were SunTrust, as escrow holder, and the Division of Florida Land

---

[1] The Surety Bond originally was in the amount of $5,000,000, effective December 1, 2006. On December 1, 2007, Westchester issued a rider increasing the Surety Bond amount to $6,750,000.

Sales, Condominiums and Mobile Homes of the Department of Business and Professional Regulation, State of Florida. The purpose of the Surety Bond was to allow SunTrust to release the remaining Deposits for use by the debtor in construction while assuring SunTrust that, if it were required to refund a Deposit, Westchester would provide the funds if the debtor did not. Pursuant to the terms of the Surety Bond, SunTrust released the remainder of the plaintiffs' Deposits to Mona Lisa.

On March 23, 2006, Mona Lisa and BankFirst entered into a mortgage agreement (the "Mortgage") securing a construction loan in the amount of $52,800,000. By this point, most of the purchase agreements already were executed and most of the Deposits were paid. BankFirst conditioned the Mortgage on the payment of Deposits by plaintiffs and other purchasers. The debtor eventually completed construction of the hotel, which opened in 2008.

### The Adversary Proceedings

From May 2008 through January 2009, various plaintiffs brought individual actions against Mona Lisa in the United States District Court for the Middle District of Florida. On November 7, 2008, these and other civil cases filed against Mona Lisa were consolidated under Case Number 6:08-cv-735-Orl-KRS.

On January 15, 2009, Mona Lisa filed a voluntary petition for bankruptcy under Chapter 11. Shortly thereafter, these three adversary proceedings were filed by the 55 named plaintiffs[2] listed on Exhibit A.

---

[2] Because the date each plaintiff initially asserted his or her claim later may become important for determining whether the claim is barred by the applicable statutes of limitation, Exhibit A lists the date each plaintiff first asserted his or her claim. In addition, Exhibit A lists the date each plaintiff filed a proof of claim, the claim number, and whether the debtor has objected to the claim.

In all three complaints, the plaintiffs allege the following 10 causes of action against Mona Lisa:

- **Count I**: Interstate Land Sales Full Disclosure Act (15 U.S.C. § 1703);
- **Count II**: 1933 Securities Act (15 U.S.C. § 77e);
- **Count III**: Florida Securities and Investor Protection Act (Fla. Stat. Chap. 517);
- **Count IV**: Florida Condominium Act (Fla. Stat. § 718.202);
- **Count V**: Florida Condominium Act (Fla. Stat. § 718.503);
- **Count VI**: Florida Condominium Act (Fla. Stat. § 718.506);
- **Count VII**: Florida Unfair Trade Practices Act (Fla. Stat. § 501.201 et seq.);
- **Count VIII**: Breach of Contract;
- **Count IX**: Equitable Lien; and
- **Count X**: Declaratory Judgment.

Plaintiffs name Mona Lisa as a defendant in all causes of action contained in the complaints. Counts I through VIII name only Mona Lisa as a defendant. Count IX (Equitable Lien) names only Mona Lisa and BankFirst. Count X (Declaratory Relief) names Mona Lisa, BankFirst, SunTrust, and Westchester as defendants.

Plaintiffs also were required to file proofs of claim in this Chapter 11 case no later than May 26, 2009. Most, if not all, of the plaintiffs timely filed their claim or have otherwise requested an extension of time to do so. Therefore, the plaintiffs have asserted claims against the debtor both in these adversary proceedings and in their proofs of claims. The claims against SunTrust, Westchester, and BankFirst are raised only in the adversary proceedings.

The defendants now move to dismiss the three adversary proceedings because: 1) the actions are improperly brought as adversary proceedings; 2) as to certain claims, plaintiffs have failed to state a cause of action upon which relief can be granted; and 3) certain of the claims are barred by the applicable statute of limitations. See, Mona Lisa's motions to dismiss (In the

Bruno Adversary, Doc. No. 11; in the Dodsworth Adversary, Doc. No. 17; in the McKibbin Adversary, Doc. No. 8), Westchester's motions to dismiss (In the Bruno Adversary, Doc. Nos. 17 and 44; in the Dodsworth Adversary, Doc. No. 15; in the McKibbin Adversary, Doc. No. 6), BankFirst's motion to dismiss (Bruno Adversary, Doc. Nos. 14 and 43—seeks dismissal as to Counts IX and X only); and SunTrust's motions to dismiss (In the Bruno Adversary, Doc. No. 39; in the Dodsworth Adversary, Doc. No. 19; in the McKibbin Adversary, Doc. No. 9).

All the defendants argue that the plaintiffs are improperly trying to collect a debt in violation of the automatic stay imposed by 11 U.S.C. § 362 by filing unnecessary adversary proceedings when filing a proof of claim is sufficient. Section 362(a)(1) of the Bankruptcy Code prohibits the commencement of any action to recover a claim against a debtor that arose before the filing of a bankruptcy case. Defendants argue "a creditor may not pursue a state court claim based on a pre-petition debt through an adversary proceeding merely because the debtor had filed for bankruptcy." In re Edghill, 113 B.R. 783, 784 (Bankr. S.D. Fla. 1990) (citing In re Penney, 76 B.R. 160 (Bankr. N.D. Cal. 1983)).

Plaintiffs, in response, argue that Rule 7001 of the Federal Rules of Bankruptcy Procedure provides that adversary proceedings may be brought for, among other matters, (1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee; (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property; and (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing. Plaintiffs also cite the In re Penney decision, which stated Rule 7001 "specifies what sort of relief properly sought under the Bankruptcy Code must be obtained by formal adversary proceeding as opposed to less formal motion or contested matter pursuant to Rule 9014." Penney, 76 B.R. at 161. (Emphasis added.)

Here, the plaintiffs have filed ten-count complaints against four defendants, three of whom are not debtors and who are not protected by the automatic stay. For example, in Count

IX, the plaintiffs seek a determination that they have an equitable lien higher in priority than BankFirst as to a portion of the Deposits given to purchase the hotel property. In Count X, the plaintiffs seek a declaratory judgment that Westchester is required to repay a portion of their Deposits. Moreover, even as to the debtor, the plaintiffs seek more than just the establishment of a claim, they also seek equitable relief—rescission of their purchase agreements. Bankruptcy Rule 7001 specifically contemplates that adversary proceedings are required to determine the priority and validity of creditor claims competing for recovery in a Chapter 11 case and for equitable relief. Therefore, the adversary proceedings are properly filed, even though the monetary relief the plaintiffs seek against the debtor indeed does duplicate the monetary relief they seek in their proofs of claim.

As to the proofs of claim, the bar date passed on May 26, 2009, and all plaintiffs apparently have filed proofs of claim or requested the right to file late claims.[3] The debtor has objected to the plaintiffs' claims (Doc. Nos. 179-257 in the Main Case). Further, all defendants now have answered the complaints filed in these adversary proceedings. The matters are at issue and are ready for resolution. Because of the similarity of issues raised in these adversary proceedings and the debtor's objections to the plaintiffs' proofs of claims, both judicial economy and common sense dictates that the parties, or if needed, the Court, should resolve the issues in an organized and unified manner.

Further, expedience is merited. Resolution of these issues poses a significant hurdle to the potential confirmation of Mona Lisa's Chapter 11 plan of reorganization, which currently is scheduled to occur later this year. These adversary proceedings involve 55 distinct plaintiffs, most of whom signed individualized purchase agreements for specific units of the hotel and deposited differing amounts of money based on each unit's purchase price. There is no

---

[3] See, e.g., motions seeking the extension of time to file proofs of claim filed on behalf of Andrew Jack Holdstock, David Denvir, Brian Pezzillo, Martin R. Perry, and Melissa Melissions. (Doc. Nos. 172, 173, and 174 in the Main Case.)

uniformity as to the date each plaintiff signed his or her purchase agreement, nor is there uniformity as to the date each plaintiff filed his or her claims in these proceedings.[4] Additionally, as is more fully set out below, although the Court possibly could eliminate a few claims brought by a few plaintiffs, almost all of the plaintiffs' claims assert sufficient allegations to survive the defendants' motions to dismiss, especially taking into account the strong presumption in favor of the plaintiffs at this preliminary stage.

Given the number of plaintiffs, defendants, and claims, and the complexity of the issues involved, the Court is convinced that if the parties continue these adversary proceedings in a normal litigious fashion and separate from the Chapter 11 claims resolution and confirmation process, it would significantly delay Mona Lisa's efforts to confirm a Chapter 11 reorganization and to pay creditors in this case, including (possibly) the plaintiffs. The proper procedure in disputes such as this is not outright dismissal of the adversary proceedings, but rather a delay of typical litigation strategies pending mediation and estimation of claims.

Section 502(c)(1) of the Bankruptcy Code directs the Court to estimate the value of a claim when the claim is contingent or unliquidated and processing the claim in a more conventional way would significantly delay processing the bankruptcy case as a whole. Given these adversary proceedings and the now contested proofs of claims, there is no question plaintiffs' claims are unliquidated. For all the reasons explained above, the Court concludes that trying the assertions raised in these adversary proceedings, separate from the confirmation

---

[4] Despite these discrepancies, the Court is not persuaded that the plaintiffs have been improperly joined in this adversary proceeding, as Westchester argues in its motions to dismiss. Federal Rule of Civil Procedure 20(a) provides that "Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Plaintiffs' claims regarding Mona Lisa's alleged inappropriate conduct in the sale of units in the hotel arise out of the same series of transactions and occurrences. Also, despite factual differences among specific plaintiffs and categories of plaintiffs, a significant number of questions of fact and law are common to all plaintiffs. Thus, the Court declines to dismiss these adversary proceedings based on improper joinder.

process, would significantly delay the bankruptcy case and prejudice the entire creditor body. As such, both requirements of Section 502(c)(1) are satisfied. For all of these reasons, the Court will consolidate for all purposes all three adversary proceedings, the proofs of claims filed (or to be filed) by any plaintiff, and the debtor's objections to any plaintiffs' proofs of claim. Next, the Court will require mediation on these consolidated issues. If mediation is not successful, the parties will participate in an abbreviated estimation proceeding fashioned to allow this Chapter 11 case to proceed while simultaneously protecting the plaintiffs' rights to present their case, albeit in a summary manner.

In outlining estimation procedures pursuant to Section 502(c)(1) of the Bankruptcy Code, a bankruptcy court should use whatever method is best suited to the circumstances of the case. Bittner v. Borne Chemical Co., Inc., 691 F.2d 134, 136 (3rd Cir. 1982). Additionally, Section 105 of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). In these adversary proceedings, mediation followed by an estimation of the filed claims is the most efficient and economical method to liquidate the claims and proceed toward confirmation of a plan. The Court, however, welcomes the input of the parties on the details of how both the mediation and estimation process will work. A pretrial conference to allow the parties to share their ideas and suggestions is set for **11:00 a.m. on August 19, 2009**.

Statute of Limitations. In addition to challenging these adversary proceedings as a valid vehicle to assert claims against the debtor, the defendants also assert the complaints are untimely filed. The limitations period for each of the 10 Counts raised by the complaints vary in length. The parties argued extensively in the motions to dismiss and responses thereto regarding the appropriate statute of limitations to apply to Count I, which alleges violations of the Interstate Land Sales Full Disclosure Act (ILSFDA) (15 U.S.C. § 1703). Westchester argued that rescission claims pursuant to ILSFDA Section 1703(c) are subject to a two-year statute of

limitations period, while claims for actual damages pursuant to the same section are subject to a three-year limitations period. Plaintiffs responded that the two-year statute of limitations applies to rescission claims under ILSFDA Section 1703(c) only if the contract at issue clearly provides ILSFDA's right to rescind within two years. The purchase agreements do not provide such a right.[5] Determination of whether a two-year (as opposed to the three-year outside limit) statute of limitations period applies to part of plaintiffs' claims would necessitate a determination of whether ILSFDA applies to the sales at issue, which is not appropriate at this early stage. Regardless, the statute of limitations with respect to Count I cannot exceed three years. Many of the plaintiffs failed to file their claims within three years after signing purchase agreements. Depending on the specific alleged ILSFDA violation, some claims under Count I may be disregarded in the mediation and estimation process.[6]

Similarly, Count II alleges violations of Section 77e of the Securities Act of 1933 (15 U.S.C. § 77e) and the parties again argued extensively over the applicable statute of limitations.[7] Section 77l(a)(1) of the 1933 Securities Act is the liability section with respect to violations of Section 77e. Section 77m of the 1933 Securities Act governs the statute of limitations for a claim based on liability created by Section 77l(a)(1), and it provides that such a claim must be brought within one year after the violation upon which it is based, and in no event more than three years after the security was bona fide offered to the public. 15 U.S.C. § 77m. Plaintiffs argue that Section 804 of the Sarbanes-Oxley Act of 2002 extended the statute of limitations for securities claims based on "fraud, deceit, manipulation or contrivance" to the earlier of (1) two

---

[5] The fact that the purchase agreements do not clearly provide ILSFDA's right to rescind within two years is not surprising, since Westchester argues the purchase agreements and the sale of the units in the Hotel were never subject to ILSFDA. However, at the motion to dismiss stage, the Court holds that factual disputes exist that preclude determination of whether the Hotel units constitute "lots" as that term is defined by ILSFDA.

[6] The three-year "outside limit" statute of limitations applicable to most ILSFDA claims runs from the "signing of the contract of lease." 15 U.S.C. § 1711. Only violations of 15 U.S.C. § 1703(a)(2)(A), (a)(2)(B), and (a)(2)(C) incorporate the discovery doctrine. To the extent the discovery doctrine applies, the Court makes no determination as to when the plaintiffs discovered or reasonably should have discovered the alleged ILSFDA violation.

[7] Similar to the ILSFDA analysis, at the motion to dismiss stage, the Court holds that factual disputes exist that preclude determination of whether the Hotel units constitute "securities" as that term is defined by the 1933 Securities Act.

years after the discovery of the violation, or (2) five years after the violation. 28 U.S.C. §1658. However, Section 77e (requiring a registration statement and prospectus for the sale of securities) does not include as an element of the violation any showing of fraud, deceit, manipulation or contrivance.[8]  Consequently, Section 804 of the Sarbanes-Oxley Act does not apply to Count II. To the extent specific plaintiffs failed to file their claims within one year after "the violation" or within three years after the Hotel units were "bona fide offered to the public," their claims under Count II may be disregarded in the mediation and estimation process.[9]

Finally, Count III alleges violations of the Florida Securities and Investor Protection Act (Fla. Stat. Chap. 517). Fla. Stat. § 95.11(4)(e) states that claims based on any provision of Chapter 517 of the Florida Statutes are subject to a two-year statute of limitations.[10]  To the extent specific plaintiffs failed to file their claims within two years after they discovered or reasonably should have discovered the alleged violation, their claims under Count III also may be disregarded in the mediation and estimation process.

Count IV – Fla. Stat. § 718.202.  In Count IV, plaintiffs allege Mona Lisa violated Fla. Stat. § 718.202 by withdrawing plaintiffs' escrow funds prior to completion of the Hotel. Pursuant to § 718.202(1), if construction of a condominium unit is not substantially complete at the time a developer contracts to sell that unit, the developer is required to pay into an escrow account all deposit payments up to 10 percent of the purchase price. However, a developer may be entitled to retain all deposits if an alternative assurance (for example, a surety bond) has been posted in an amount equal to the escrow requirements of the Florida Condominium Act. Fla.

---

[8] See Stephenson v. Deutsche Bank AG, 282 F.Supp.2d 1032 (D. Minn. 2003) (applying Section 77m's statute of limitations to Section 77e/Section 77l(a)(1) claim, then subsequently analyzing whether Section 804 of the Sarbanes-Oxley Act applies to other securities claims).

[9] At the motion to dismiss stage, the Court will not determine the factual dispute of when "the violation upon which the claim is based" occurred and when the units were "bona fide offered to the public."

[10] Fla. Stat. § 95.11(4)(e)'s two-year statute of limitations period is subject to the discovery doctrine, meaning the limitations period begins to run when the plaintiff discovered or reasonably should have discovered the alleged violation. The Court makes no determination as to when the plaintiffs discovered or reasonably should have discovered the alleged violation.

Stat. § 718.202(1). Specific requirements for alternative assurances are contained in Fla. Admin. Code Rule 61B-17.009.

Fla. Admin. Code Rule 61B-17.009(1) states that an "alternative assurance must be approved by the Division Director [of the Division of Florida Land Sales, Condominiums and Mobile Homes of the Department of Business and Professional Regulation, State of Florida] prior to the use by a Developer of the sales deposits intended to be assured. Pending approval, sales deposit funds to be assured by the alternative assurance must be placed in escrow." In order to obtain approval of an alternative assurance, a developer is required to submit a filing which complies with the provisions of Fla. Admin. Code Rule 61B-17.009(2).

Because construction of the Hotel was not completed when the plaintiffs signed the purchase agreements, Mona Lisa was required to establish an escrow account for plaintiffs' deposits up to 10 percent of the purchase price. The complaints state that Mona Lisa did establish such an escrow account, and later obtained the Surety Bond as an "alternative assurance" to secure the 10 percent of the purchase price required by Fla. Stat. § 718.202(1). However, the parties have not established whether or not Mona Lisa complied with Fla. Admin. Code Rule 61B-17.009, which necessitated the District Director's approval of the alternative assurance before Mona Lisa could withdraw plaintiffs' escrow funds.

The complaints do not contain a specific allegation that Mona Lisa failed to obtain the approval of the District Director before withdrawing plaintiffs' escrow funds, but they generally claim that Mona Lisa failed to comply with Fla. Stat. § 718.202 when it withdrew the escrow funds. Given the strong presumption in favor of plaintiffs' allegations at this stage, such assertions are sufficient to survive the motions to dismiss. If, however, Mona Lisa can establish that it did in fact obtain the District Director's approval of the Surety Bond as an alternative assurance prior to withdrawing plaintiffs' escrow funds, Count IV surely must fail.

Because the Court finds that factual disputes exist that preclude the outright dismissal of any of the claims at this preliminary stage, especially given the strong presumption in favor of plaintiffs' allegations when facing motions to dismiss, further discussion of each claim is unnecessary. The Court denies the defendants' motions to dismiss, consolidates the adversary proceedings and objections to proofs of claims, and directs the parties to mediation. A case management conference is scheduled for **11:00 a.m. on August 19, 2009**, to establish a specific procedures for the mediation and, if necessary, the later estimation of the claims. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on August 12, 2009.

KAREN S. JENNEMANN
United States Bankruptcy Judge

Copies provided to:

Plaintiffs' Counsel:  John L. Urban, Urban Their Federer & Jackson, P.A., 200 S. Orange Avenue, Suite 2025, Orlando, FL  32801

Plaintiffs' Counsel:  Mark C. Rutecki, 1420 Celebration Blvd., Suite 200, Celebration, FL  34747

Defendant's Counsel (Mona Lisa at Celebration, LLC):  **R Scott Shuker**, Latham Shuker Eden & Beaudine LLP, Post Office Box 3353, Orlando, FL 32802

Defendant's Counsel (Westchester Fire Insurance Company): **Vanessa D Sloat-Rogers,** Sedgwick Detert Moran & Arnold LLP, 2400 E Commercial Blvd, Ste 1100, Ft Lauderdale, FL 33308

Defendant's Counsel (SunTrust Bank):  **John R Stump,** Stump Callahan Dietrich & Spears PA, 37 North Orange Avenue, Suite 200, Orlando, FL 32801

Defendant's Counsel (BankFirst):  **L William Porter, III,** Lowndes Drosdick Doster Kantor & Reed PA, Post Office Box 2809, Orlando, FL 32802

EXHIBIT A

| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding/District Court Civil Case No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
|---|---|---|---|---|---|---|
| **Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs** | | | | | | |
| Ajogbasile, Mosunmola | 124 | 9/25/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #59 - 5/21/2009 | #246 – 7/29/2009 |
| Askeland, Morten | 320 | 2/27/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #71 - 5/21/2009 | #216 – 7/29/2009 |
| Augland, Olvind | 304 | 2/27/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #68 - 5/21/2009 | #215 – 7/29/2009 |
| Bloe, Chancelle | 103 | 9/29/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #69 - 5/21/2009 | #195 – 7/29/2009 |
| Booth, Jason | 538 | 10/28/2005 | 7/30/2008 | 6:08-cv-1264 (M.D. Fla.) | #54 - 5/21/2009 | #238 – 7/29/2009 |
| Brearley, James | 116 | 6/7/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #65 - 5/21/2009 | #214 – 7/29/2009 |
| Brearley, Joanne | 116 | 6/7/2007 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #65 – 5/21/2009 | #214 – 7/29/2009 |
| Bruno, Laura | 535 | 9/26/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #57 – 5/21/2009 | #250 – 7/29/2009 |
| Byrne, Anne Marie | 319/303 | 4/29/2007 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #58 – 5/21/2009 | #222 – 7/29/2009 |
| Byrne, Maurice | 319/303 | 4/29/2007 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #58 – 5/21/2009 | #222 – 7/29/2009 |
| Crovetto, Giovanni | 221 | 1/17/2006 | 1/14/2009 | 6:09-cv-95 (M.D. Fla.) | #56 - 5/21/2009 | #243 - 7/29/2009 |
| Carlson, Noreen | 347 | 9/26/2005 | 5/6/2008 | 6:08-cv-737 (M.D. Fla.) | #48 – 5/21/2009 | #210 - 7/29/2009 |
| Deiulio, William | 538 | 10/28/2005 | 7/30/2008 | 6:08-cv-1264 (M.D. Fla.) | #54 – 5/21/2009 | #238 - 7/29/2009 |

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding/District Court Civil Case No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| Flaugher, Sean | 140 | 10/3/2005 | 8/18/2008 | 6:08-cv-1415 (M.D. Fla.) | #55 – 5/21/2009 | #242 - 7/29/2009 |
| Halbeck, Eric | 418 | 9/29/2005 | 5/6/2008 | 6:08-cv-738 (M.D. Fla.) | #50 – 5/21/2009 | #182 - 7/29/2009 |
| Han, Hong Ju | 512 | 10/3/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #72 – 5/21/2009 | #194 - 7/29/2009 |
| Holden, Jacqueline | 515 | 10/11/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #62 – 5/21/2009 | #247 - 7/29/2009 |
| Holden, Paul | 515 | 10/11/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #62 – 5/21/2009 | #247 - 7/29/2009 |
| Honcharik, Michael | 418 | 9/29/2005 | 5/6/2008 | 6:08-cv-738 (M.D. Fla.) | #50 – 5/21/2009 | #182 - 7/29/2009 |
| Lenihan, Patrick | 140 | 10/3/2005 | 8/18/2008 | 6:08-cv-1415 (M.D. Fla.) | #55 – 5/21/2009 | #242 - 7/29/2009 |
| Lynch, Charles | 439 | 9/22/2005 | 5/6/2008 | 6:08-cv-736 (M.D. Fla.) | #52 – 5/21/2009 | #207 - 7/29/2009 |
| Marklew, Clive | 219 | 11/10/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #64 – 5/21/2009 | #211 - 7/29/2009 |
| Marklew, Jessica | 219 | 11/10/2005 | 4/1/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #64 – 5/21/2009 | #211 - 7/29/2009 |
| Mondello, Anthony | 538 | 10/28/2005 | 7/30/2008 | 6:08-cv-1264 (M.D. Fla.) | #54 – 5/21/2009 | #238 - 7/29/2009 |
| Ormson, Robert | 218 | 2/27/2006 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #63 – 5/21/2009 | #180 - 7/29/2009 |
| Ormson, Susan | 218 | 2/27/2006 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #63 – 5/21/2009 | #180 - 7/29/2009 |
| O'Sullivan, Dennis | 517 | 9/28/2005 | 5/6/2008 | 6:08-cv-735 (M.D. Fla.) | #49 – 5/21/2009 | #183 - 7/29/2009 |

| Bruno Adversary Proceeding (6:09-ap-00049) Plaintiffs | | | | | | |
|---|---|---|---|---|---|---|
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | Adversary Proceeding/District Court Civil Case No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
| O'Sullivan, Kathryn | 517 | 9/28/2005 | 5/6/2008 | 6:08-cv-735 (M.D. Fla.) | #49 – 5/21/2009 | #183 - 7/29/2009 |
| Owen, Gregory | 306 | 9/30/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #60 – 5/21/2009 | #248 - 7/29/2009 |
| Reardon, Krystyn | 226 | 9/29/2005 | 5/6/2008 | 6:08-cv-739 (M.D. Fla.) | #51 – 5/21/2009 | #181 - 7/29/2009 |
| Richards, Jene Martins | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Richards, Nathaniel Dean | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Savino, Anthony | 511/536 | 10/28/2005 | 6/6/2008 | 6:08-cv-902 (M.D. Fla.) | #53 – 5/21/2009 | #239 - 7/29/2009 |
| Scott, Brenda | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Scott, Gilbert | 125 | 9/24/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #61 – 5/21/2009 | #244 - 7/29/2009 |
| Staples, Gracie Hill | 124 | 9/25/2005 | 2/25/2009 | 6:09-ap-49 (Bankr. M.D. Fla.) | #59 – 5/21/2009 | #246 - 7/29/2009 |
| Vinueza, Vincent | 221 | 1/17/2006 | 1/14/2009 | 6:09-cv-95 (M.D. Fla.) | #56 – 5/21/2009 | #243 - 7/29/2009 |

| Dodsworth Adversary Proceeding (6:09-ap-000769) Plaintiffs ||||||
| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Adv. Proc. Filed | Adversary Proceeding No. | Docket No. of Proof of Claim and Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
|---|---|---|---|---|---|---|
| Adamson, Peter | 402/505 | 3/30/2007 | 5/26/2009 | 6:09-ap-000769 | #76 - 5/21/2009 | #218 – 7/29/2009 |
| Adamson, Roseleen | 402/505 | 3/30/2007 | 5/26/2009 | 6:09-ap-000769 | #76 - 5/21/2009 | #218 – 7/29/2009 |
| Denvir, David | 529 | 2/16/2007 | 5/26/2009 | 6:09-ap-000769 | #131 - 7/9/2009 | #186 – 7/29/2009 |
| Dodsworth, Karen | 108 | 6/22/2006 | 5/26/2009 | 6:09-ap-000769 | #74 - 5/21/2009 | #217 – 7/29/2009 |
| Dodsworth, Martin | 108 | 6/22/2006 | 5/26/2009 | 6:09-ap-000769 | #74 - 5/21/2009 | #217 – 7/29/2009 |
| Gonzalez, Alvaro | 523 | 1/12/2006 | 5/26/2009 | 6:09-ap-000769 | #78 - 5/21/2009 | #193 – 7/29/2009 |
| Gonzalez, Dario | 253 | 1/12/2006 | 5/26/2009 | 6:09-ap-000769 | #78 - 5/21/2009 | #193 – 7/29/2009 |
| Holdstock, Andrew Jack | 126 | 9/29/2005 | 5/26/2009 | 6:09-ap-000769 | #129 - 7/06/2009 | #185 – 7/29/2009 |
| Perry, Melissa | 247 | 6/20/2005 | 5/26/2009 | 6:09-ap-000769 | #130 - 7/06/2009 | #184 – 7/29/2009 |
| Perry, Martin | 247 | 6/20/2005 | 5/26/2009 | 6:09-ap-000769 | #130 - 7/06/2009 | #184 – 7/29/2009 |
| Pezzillo, Brian | 247 | 6/20/2005 | 5/26/2009 | 6:09-ap-000769 | #130 - 7/06/2009 | #184 – 7/29/2009 |

| **McKibbin Adversary Proceeding (6:09-ap-000770) Plaintiffs** |
|---|---|---|---|---|---|---|

| Name of Claimant | Unit No. | Date of Purchase Agreement | Date Proceeding Filed | District Court Civil Case No. | Docket No. of Proof of Claim And Date Filed | Docket No. of Objection to Proof of Claim and Date Filed |
|---|---|---|---|---|---|---|
| Hannon, Brian | 423 | 6/13/2006 | 9/19/2008 | 6:08-cv-1617 | #70 - 5/21/2009 | #221 – 7/29/2009 |
| Kurtzman, Kelly | 141 | 11/30/2005 | 11/25/2008 | 6:08-cv-1987 | #75 - 5/21/2009 | #224 – 7/29/2009 |
| Kurtzman, Steve | 141 | 11/30/2005 | 11/25/2008 | 6:08-cv-1987 | #75 - 5/21/2009 | #224 – 7/29/2009 |
| Lists, John | 410 | 4/1/2006 | 11/18/2008 | 6:08-cv-1617 | #73 - 5/21/2009 | #223 – 7/29/2009 |
| List, Susan | 410 | 4/1/2006 | 11/18/2008 | 6:08-cv-1617 | #73 - 5/21/2009 | #223 – 7/29/2009 |
| Maxwell, Malcom | 513 | 9/4/2007 | 9/19/2008 | 6:08-cv-1617 | #66 - 5/21/2009 | #220 – 7/29/2009 |
| McKibbin, Moire | 238 and 246 | 9/22/2005 and 9/23/2005 | 9/19/2008 | 6:08-cv-1617 | #67 - 5/21/2009 | #225 – 7/29/2009 |